SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

CONTINENTAL TOBACCO COMPANY
OF SOUTH CAROLINA, INC.,
et al., Defendants.

Civ. No. 67–1156.

United States District Court,
S. D. Florida.

May 12, 1971.

Roderick Knott, Miami, Fla., for plaintiff.

Jeffrey Allen Tew, Miami, Fla., for defendants.

## FINAL ORDER

KING, District Judge.

This cause came on for trial by the Court, sitting without a jury, on February 16, 17, 18, 25, and March 3 and 10, 1971, at which time the Court heard the oral testimony of the witnesses for the parties, examined the exhibits and other evidence introduced by the parties, heard the oral argument of counsel for the parties, and studied the legal authorities submitted by the counsel for the parties.

On November 9, 1967, the plaintiff filed a complaint to enjoin Continental Tobacco Company of South Carolina, Inc. and others from engaging in acts and practices constituting violations of the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934. On December 15, 1967, this Court, by C. Clyde Atkins, United States District Judge, entered its Order granting the plaintiff's application for preliminary injunction against the defendants, Continental Tobacco Company of South Carolina, Inc., James K. Sorenson, and Heinrich Lorin, their affiliates, agents, servants, employees, and attorneys, enjoining said defendants from making use of any means or instruments of transportation or communication in interstate commerce or the mails to offer to sell, sell, or deliver after sale debenture bonds, warrants to purchase common stock, and common stock of Continental Tobacco Company of South Carolina, Inc., or any other security unless and until a registration statement had been filed with the Securities and Exchange Commission as to said securities. Judge Atkins found that there was reasonable expectation that the policy of the Securities Act of 1933, as amended, would be thwarted unless by order of this Court those defendants were preliminarily enjoined from engaging in the unlawful conduct proscribed by the Securities Act of 1933, as amended.

The Court makes the following findings of fact:

In the summer of 1967, James Sorenson, Heinrich Lorin, Kenneth Dawes, and Richard Hoffman offered, sold and delivered for sale, debentures for Continental Tobacco Company, with warrants to purchase common stock attached, to investors in Broward County, Florida. At that time Sorenson and Lorin were officers of Continental Tobacco Company. The debentures and the warrants attached were not registered with the Securities and Exchange Commission as provided for by the Securities Act of 1933, as amended, and the Securities and Exchange Commission rules promulgated under said statute. No evidence was introduced to show the availability of an exemption from such registration as to these debenture sales occurring in 1967, and, therefore, the Court finds that these sales and offers to sell were in violation of Section 5 of the Securities Act of 1933, as amended.

By Order dated August 19, 1968, and confirmed by subsequent Order dated October 17, 1968, the United States District Court for the District of South Carolina approved a plan of arrangement between the defendant, Continental Tobacco Company, and the creditors of that company under Chapter 11 of the Federal Bankruptcy Act.

On February 10, 1969, the defendant, Continental Tobacco Company, entered into a management contract with Contoba Management Corporation, a Florida corporation. Pursuant to that agreement, the defendant, Continental Tobacco Company, elected new officers and directors to manage its affairs.

From approximately June, 1969 until October, 1970, the defendant, Continental, offered common stock to 38 persons, of which it sold common stock to 35 persons, including 15 persons for whom one of the investors acted as trustee, the 15 beneficiaries being composed of nine members of the trustee's family and six long-term friends and business associates. This common stock was not registered pursuant to the provisions of the Securities Act of 1933, as amended. Almost all of these investors executed an agreement with the defendant corporation prior to the purchase of their com-

mon stock ("investment letters") which acknowledged receipt of a brochure concerning the corporation and which included unaudited financial statements. The investment letter further stated that the investor had received access to all of the information about the defendant, Continental, that he desired; that he was purchasing the securities with the full understanding that they were not registered with the Securities and Exchange Commission, and that said securities were sold pursuant to an exemption from registration which depended upon the investor's investment intent; that the investor understood the nature of his investment; that he was buying the stock for investment and not for resale; that the corporation would permit the transfer of the stock out of his name only when a request for transfer was accompanied by an opinion of counsel to the effect that neither the sale nor the proposed transfer would result in a violation of the Securities Act of 1933, as amended; and he further agreed that the company could put a legend on the stock certificate which would restrict its transfer.

One investor, after purchasing stock, requested that his money be returned by the corporation, and pursuant to that request his money was returned in full. The testimony of the common stock purchasers of Continental, who were called as witnesses by the plaintiff, established that these investors had received both written and oral information concerning the corporation, and that they had access to any additional information which they might have required or requested, and that they had had personal contacts with the officers of the defendant corporation. These witnesses further testified that they knew the risk of their investments, that they knew the stock was not registered, and that they had purchased the stock with the intent to hold the stock for investment and not to resell it. The evidence also showed that the stock has remained in the hands of the original purchasers and that the defendant, Continental, had refused to allow transfer of this unregistered stock. The experience and background of these investors were such that they were in a position to make an informed investment decision, i. e., they could fend for themselves.

One of the investors testified that the brochure which he received provided him access to information concerning the terms of the offering (total number of shares being offered, the offering price, and the par value per share); the speculative factors of his investment; the history of the defendant corporation, including its prior bankruptcy; the nature of the defendant corporation's business, including the product to be produced and the plan for its distribution; the authorized and outstanding debt and capital stock of the defendant, together with the options outstanding to purchase common stock; the intended use of proceeds from the sale of common stock; the management of the defendant corporation with their background; a complete description of the capital stock of the defendant corporation, including dividend and voting rights of both defendant's common and preferred stock and the redemption, conversion and preference rights of the defendant's preferred stock; litigation to which the defendant was a party, including this injunction proceeding and the entry of the temporary injunction; an unaudited financial statement, including a balance sheet and an income and disbursement or "operating" statement. The amount raised from the sale of this common stock was $140,450.

From May, 1969 until August, 1970, the defendant corporation borrowed money from a bank, a registered broker/dealer, and five individuals, three of whom were shareholders in the defendant corporation, one of whom was the attorney and financial adviser for another stockholder of the corporation, and one of whom was the president of a registered broker/dealer firm. The defendant corporation borrowed during that period a total of $59,590. The defendant corporation also offered to four of its creditors (two corporations, a bank,

and a creditor from the bankruptcy reorganization), in a plan to refinance the pre-existing debt owed by the defendant corporation to these creditors, two-year promissory notes collateralized by mutual fund shares owned by the defendant corporation.

From June, 1969 until October, 1970, the defendant corporation granted stock options to a total of 13 persons: a corporation owned by two of its stockholders which distributes the defendant's product in Miami, Florida; five officers and employees of the defendant; and seven stockholders of the defendant.

The offering by the defendant corporation of debenture bonds and warrants to purchase common stock in 1967, prior to the bankruptcy reorganization, and the offering by the defendant of qualified stock options to its officers and employees in 1969 and 1970, were not part of the company's 1969–1970 plan of financing in which it offered common stock, options to purchase common stock and promissory notes. Therefore, the 1967 offering of debenture bonds and warrants to purchase common stock and the offering by the defendant of qualified stock options to its officers and employees should not be integrated with the 1969–1970 offering of common stock, unqualified options to purchase common stock, and promissory notes, but rather should be considered as separate offerings.

The persons who were offered common stock, options to purchase common stock, and promissory notes by the defendant corporation were furnished and/or provided access to the same type and kind of information that would have otherwise been provided in a registration statement filed pursuant to Securities Act of 1933, as amended, and rules and regulations thereunder. These offerees purchased their securities with the intention to hold their securities for investment and not with a view to distribution or resale of their securities.

■ The offers and sales by the defendant, Continental, of common stock, options to purchase common stock (both to employees and others), and promissory notes from June, 1969 to October, 1970, are exempt from registration in that they were transactions not involving any public offering, as provided for in Section 4(2) of the Securities Act of 1933, as amended.

■ Notwithstanding the fact that the 1969–1970 offers and sales by the defendant, Continental, were exempt from registration, the plaintiff has failed to prove that the defendant corporation, unless permanently enjoined, will thwart the policies of the Securities Act of 1933, as amended, or engage in violations of that law in the offer and sale of its securities. To the contrary, the evidence showed, and the Court finds, that the officers, directors, and attorneys of the defendant corporation who have managed and advised the defendant corporation since its discharge from bankruptcy have conscientiously complied with the securities laws and have dealt with the stockholders of Continental in a fair and honest manner. The Court, therefore, finds that there is no reasonable expectation nor cognizable danger that the defendant will thwart the policy of the Securities Act of 1933, as amended, by engaging in the activities proscribed thereby. In making this finding the Court has considered the fact that this corporation in 1967, through persons no longer associated with it, engaged in violations of the Securities Act of 1933, as amended. But this fact alone, in the absence of any other facts which would prove that present management is disposed to violate the securities laws, is insufficient to prove that this present management will, unless permanently enjoined, violate the Securities Act of 1933, as amended, or thwart its purposes.

The defendant, Continental Tobacco Company of South Carolina, Inc., its officers, directors, employees and agents are expected by this Court to continue to conscientiously comply with the provisions of the federal securities laws and to fulfill the statement by its counsel at

**592**

the hearing that this corporation will, in the offer and sale of securities, and in its dealings with its shareholders in general, act only in good faith and on sound business principles.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of this action and the parties hereto. 15 U.S.C. §§ 77v(a) and 78aa.

2. The offering of securities by the defendant, Continental, from June, 1969 to October, 1970, were transactions not involving any public offering, and are, therefore, exempt from the registration provisions of the Securities Act of 1933, as amended. S.E.C. v. Ralston Purina, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953).

3. No permanent injunction shall issue against the defendant, Continental Tobacco Company of South Carolina, Inc. There is no reasonable expectation nor cognizable danger that this defendant will thwart the policies of the Securities Act of 1933, as amended, by engaging in the activities proscribed thereby. United States v. W. T. Grant & Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); S.E.C. v. Culpepper, 270 F.2d 241 (2nd Cir. 1959).

It is, therefore,

Ordered, adjudged and decreed:

1. That the preliminary injunction against the defendant, Continental Tobacco Company of South Carolina, Inc., entered December 15, 1967, be, and the same is, hereby vacated, set aside and held for naught.

2. That the plaintiff's prayer for a permanent injunction against the defendant, Continental Tobacco Company of South Carolina, Inc., be, and the same is, hereby denied, and the plaintiff's complaint against the defendant, Continental Tobacco Company of South Carolina, Inc., be, and the same is, hereby dismissed with prejudice to the plaintiff.